THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALBERT MEDINA, Appellant.— Appeal from an order of the County Court, Suffolk County, dated June 21, 1968, which certified appellant, as a narcotic addict, to the care and custody of the Narcotic Addiction Control Commission for an indefinite period not to exceed 36 months from the date of the order. Order reversed, on the law and the facts, and case remanded to the County Court for resentencing in accordance with the views expressed in this memorandum. Appellant was arrested in October, 1967, and indicted for criminal possession of a dangerous drug in the second degree, sale and possesion of hypodermic syringes and hypodermic needles, and possession of certain other instruments. At the time of his arraignment on October 10, 1967, the District Court of Suffolk County directed a physical examination of appellant pursuant to section 207 of the Mental Hygiene Law. An examination was conducted pursuant thereto. He remained incarcerated when he failed to raise bail. On March 12, 1968, he was permitted to withdraw his previous plea of not guilty to the indictment and to enter a plea of guilty to criminal possession of a dangerous drug, in the fourth degree, a Class A misdemeanor (Penal Law, § 220.05), on the first count, in full satisfaction of the indictment. On May 6, 1968, the County Court ordered a medical examination to determine whether appellant was a narcotic addict. After receipt of the examining physician's report the court advised appellant that the report indicated that he was a narcotic addict within the definition of the Mental Hygiene Law (§ 201, subd. 2). Appellant denied that he was an addict and the court

scheduled a hearing of the issue in accordance with the provisions of section 208 of the Mental Hygiene Law. At the hearing the examining physician testified that when he examined appellant on May 6 he found scarring of the skin and veins in both bicipital areas. Appellant had given him his prior history and admitted that he was previously addicted to narcotics. The physician did not perform any tests on appellant to determine whether he was an addict; nor did he check with any of the hospitals in which he had been. There was no way of determining when the scarring on appellant's arm was caused. The doctor admitted that he could not state whether appellant was an addict at the time of the examination or whether he would be dependent upon drugs. He testified that he was not qualified to state whether appellant was cured of his previous addiction. Such testimony would have to come from someone with more expertise. Two police officers testified, over objection, to conversations they had with the woman who was arrested with appellant. This testimony indicated that appellant and the woman had purchased and used narcotics together and that appellant had undergone withdrawal symptoms when he was first incarcerated. Appellant testified that he had been an addict and had undergone treatment several times. He had not used narcotics since April of 1967 and believed he was cured because during his last voluntary commitment for treatment he had undergone group and individual therapy. He now understood, for the first time, why he used narcotics, and therefore believed that he would not use them again. The term "narcotic addict" is defined by section 201 (subd. 2) of the Mental Hygiene Law as follows: "The term 'narcotic addict' means a person who is at the time of examination dependent upon opium, heroin, morphine or any derivative or synthetic drug of that group or who by reason of the repeated use of any such drug is in imminent danger of becoming dependent upon opium, heroin, morphine, or any derivative or synthetic drug of that group". It has been held that this definition is not unconstitutionally vague (*Matter of Spadafora*, 54 Misc 2d 123, affd. 29 A D 2d 742). We are of the opinion that all the facts at bar are insufficient to establish that appellant is a narcotic addict. To hold otherwise would require us to find that the mere discovery of hypodermic needle scars on one's arms, coupled with an admission of prior addiction, is sufficient to sustain a determination that he is an addict within the meaning of the above-quoted provision of the Mental Hygiene Law. It is obvious that appellant was not physically dependent upon narcotics at the time of the examination, since he had been in custody for eight months prior to the physical examination. This is to be distinguished from *People* v. *Fuller* (57 Misc 2d 350, revd. on other grounds 24 N Y 2d 292), where the defendant was undergoing withdrawal symptoms at the time of his physical examination. If appellant could not be found to be an addict within the first classification of this statutory definition, the alternative test of imminent danger of becoming dependent upon narcotics could be utilized. However, we are of the opinion that under the facts of this case the evidence did not warrant such a finding. It is our view that, before the second classification in this statutory provision can be utilized, expert testimony as to the subject person's mental condition must be introduced. This could be accomplished by having a psychological examination conducted to determine if the person's mental state is such that the previous reasons which caused him to use narcotics still exist. If such be the case, the physician could then testify as to whether he is in imminent danger of becoming dependent on drugs. Without such testimony, as is the case here, there is no basis for concluding that one in appellant's position is in imminent danger of becoming dependent on drugs. Accordingly, since the proof was insufficient to support a finding that appellant is a narcotic addict, he must

be resentenced on the conviction of criminal possession of a dangerous drug in the fourth degree, in accordance with the provisions of the Penal Law, and not as a narcotic addict. Even if we were not reversing because all the evidence was insufficient to establish that appellant is a narcotic addict, we would be compelled to reverse on two other grounds. In *People v. Fuller* (24 N Y 2d 292) the Court of Appeals held that the failure to afford a convicted addict a jury trial on the issue of his addiction violates the equal protection clause of the Fourteenth Amendment. In *People v. Donaldson* (25 N Y 2d 38) the court held that *Fuller* was to be applied retroactively to those "criminal addicts" whose hearings took place prior to the *Fuller* decision. As a result, we would be compelled to reverse and remand the case for a new hearing before a jury. The other ground upon which we would be compelled to reverse is the denial of appellant's right of confrontation at the hearing. Section 208 (subd. 2) of the Mental Hygiene Law sets forth the procedure to be utilized in hearings to determine if one in appellant's position is an addict. It reads in part: "The burden of proof shall be upon the people to prove the fact of addiction by a preponderance of the credible evidence. Evidence may be presented by either party on any matter relevant to the issue of whether or not the defendant is a narcotic addict. Any relevant evidence, not legally privileged, shall be received regardless of its admissibility under the exclusionary rules of evidence; *provided, however, that the right of confrontation and cross-examination, as it exists at a criminal trial, shall not be abridged*" (emphasis supplied). As noted above, two police officers were permitted to testify as to conversations they had with the woman arrested with appellant. Such testimony was a clear violation of appellant's right of confrontation, since the woman could not be cross-examined. It is obvious that, while the statute does not require the application of all the exclusionary rules of evidence, it does forbid a denial of the right of confrontation. Hopkins, Acting P. J., Benjamin, Munder, Martuscello and Kleinfeld, JJ., concur.